## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| REBECCA BLY<br>3900 Connecticut Avenue, N.W.<br>Washington, DC 20008,<br>on behalf of herself and all others similarly<br>situated,<br><br>          Plaintiff,<br><br>v.<br><br>LG PHILIPS LCD CO., LTD<br>20 Yoido-dong<br>Youngdungpo-gu<br>Seoul 150-721<br>Republic of Korea;<br><br>LG PHILIPS LCD AMERICA, INC.<br>150 East Brokaw Rd.<br>San Jose, California 95112;<br><br>SAMSUNG ELECTRONICS CO., LTD.<br>Samsung Main Building 250-2 ga<br>Taepyung-ro Chung-gu<br>Seoul, Korea;<br><br>SHARP CORPORATION<br>22-22 Nagaike-cho<br>Abeno-ku<br>Osaka 545-8522<br>Japan;<br><br>SHARP ELECTRONICS<br>CORPORATION<br>Sharp Plaza<br>Mahwah, New Jersey 07430;<br><br>TOSHIBA CORPORATION<br>1-1<br>Shibaura 1-chrome<br>Minato-ku<br>Tokyo, 100=8220<br>Japan; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br><br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br><br><br>**JURY TRIAL DEMANDED** |

| | |
|---|---|
| TOSHIBA MATSUSHITA DISPLAY TECHNOLOGY CO. LTD. Rivage3 Shinagawa 1-8 Konan 4-chome Minato-ku Tokyo 108-0075 Japan; <br><br> HITACHI LTD. 6-1 Marunouchi Center Building 13F Chiyoda-ku Tokyo, 101-0022 Japan; <br><br> HITACHI DISPLAYS, LTD. AKS Building 5F 6-2 Kanda Neribei-cho 3 Chiyoda-ku Tokyo, 101-0022 Japan; <br><br> HITACHI AMERICA LTD. 50 Prospect Avenue Tarrytown, New York 10591; <br><br> HITACHI ELECTRONIC DEVICES (USA), INC. 575 Maudlin Road Greenville, South Carolina 29607; <br><br> SANYO EPSON IMAGING DEVICES CORPORATION World Trade Center Building 15F 2-4-1 Hamamatsu-cho Minato-ku Tokyo, Japan; <br><br> NEC CORPORATION 7-1 Shiba 5-chome Minato-ku Tokyo 108-8001 Japan; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

| | |
|---|---|
| NEC LCD TECHNOLOGIES, LTD.<br>1753 Shimonumabe<br>Nakahara-Ku<br>Kawasaki<br>Kanagawa 211-8666<br>Japan;<br><br>NEC ELECTRONICS AMERICA, INC.<br>2880 Scott Boulevard<br>Santa Clara, CA  95050;<br><br>IDT INTERNATIONAL, LTD.<br>Block C, 9th Floor<br>Kaiser Estate Phase 1<br>41 Man Yue Street<br>Hunghom<br>Kowloon<br>Hong Kong;<br><br>AU OPTRONICS; INTERNATIONAL<br>DISPLAY TECHNOLOGY CO., LTD.<br>No. 1<br>Li-Hsin Rd. 2<br>Hsinchu Science Park<br>Hsinchu 30078<br>Taiwan;<br><br>INTERNATIONAL DISPLAY<br>TECHNOLOGY USA, INC.<br>101 Metro Drive, Suite 510<br>San Jose, CA  95110-1343;<br><br>AU OPTRONICS CORPORATION<br>AMERICA<br>9720 Cypresswood Drive, Suite 241<br>Houston, TX;<br><br>CHI MEI OPTOELECTRONICS<br>No. 3, Sec. 1, Huanshi Road<br>Southern Taiwan Science Park<br>Sinshih Township<br>Tainan County 74147<br>Taiwan; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

| | | |
|---|---|---|
| CHE MEI OPTOELECTRONICS USA, INC.<br>101 Metro Drive, Suite 510<br>San Jose, CA 95110-1343;<br><br>CHUNGWA PICTURE TUBES, LTD.<br>1127 Hopin Road<br>Padeh City<br>Taoyuan<br>Taiwan;<br><br>and<br><br>HANNSTAR DISPLAY CORPORATION<br>No. 480<br>Reuiguang Road, 12th Floor<br>Neihu Chiu<br>Taipei 114<br>Taiwan,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

Plaintiff Rebecca Bly, by her attorneys, brings this civil action for damages and injunctive relief on behalf of herself and all others similarly situated against the above-named Defendants, and demanding a trial by jury, complain and allege as follows:

## JURISDICTION AND VENUE

1.  This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which amends 28 U.S.C. §1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiff is a citizen of a State different from any defendant" and the aggregated amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See* 28 U.S.C. §1332(d)(2) and (6). This Court also has jurisdiction under 28 U.S.C. §1332(d) because "one or more members of the class is a citizen of a state within the U.S. and one or more of the Defendants is a citizen or subject of a foreign state." The Court also has personal jurisdiction

over the parties because Plaintiff submits to the jurisdiction of the Court and Defendants

systematically and continually conduct business here and throughout the U.S., including

marketing, advertising, and sales directed to District of Columbia residents.

2.    This Court has venue under 15 U.S.C. §22 and 28 U.S.C. §1391 because

Defendants reside, transact business, or are found within this District, and a substantial part of

the events giving rise to the claims arose in this District.

## DEFINITIONS

3.    As used herein, the term "TFT-LCD Products" means Thin Film Transistor Liquid

Crystal Display products, including such products as are used in televisions, computer (both

desktop and notebook) monitors, mobile phones, personal digital assistants ("PDA's") and other

devices.

4.    As used herein, the term "Class Period" means the time period extending from at

least January 1, 1998 through at least December 31, 2005.

## THE PARTIES

### The Plaintiff

5.    Plaintiff, Rebecca Bly, is a resident of the District of Columbia who indirectly

purchased TFT-LCD Panels from one or more of the Defendants during the Class Period, for end

use and not for resale, and was injured as a result of Defendants' illegal conduct.

### The Defendants

6.    Defendant LG Philips LCD Co., Ltd. ("LG Philips") is a Korean entity with its

principal place of business located at 20 Yoido-dong, Youngdungpo-gu, Seoul 150-721,

Republic of Korea.  LG Philips is a joint venture created in 1999 by Philips Electronics NV and

LG LCD.  LG Philips maintains offices in San Jose, California.  In its Form 6-K filed on

December 11, 2006 with the United States Securities and Exchange Commission ("SEC"), LG

Philips stated that it "is a leading manufacturer and supplier of thin-film transistor liquid crystal

display (TFT-LCD) panels"; that it "manufacturers TFT-LCD panels in a wide range of sizes and

specifications for use in TVs, monitors, notebook PCs, and various applications"; that it

"currently operates seven fabrication facilities and four back-end assembly facilities in Korea,

China and Poland." (<http:www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200_j_e.jsp>).

During the Class Period, LG Philips manufactured, sold and distributed TFT-LCD Products to

customers throughout the United States, including the District of Columbia.

      7.     Defendant LG Philips LCD America, Inc. is an entity organized under the laws of

California with its principal place of business located at 150 East Brokaw Road, San Jose, CA

95112. During the Class Period, LG Philips LCD America, Inc. manufactured, sold and

distributed TFT-LCD Products to customers throughout the United States, including the District

of Columbia.

      8.     Defendant Samsung Electronics Co. Ltd. ("Samsung") is a business entity

organized under the laws of South Korea, with its principal place of business at Samsung Main

Building 250-2 ga. Taepyung-ro Chung-gu, Seoul, Korea. During the During the Class Period,

Samsung manufactured, sold and distributed TFT-LCD Products to customers throughout the

United States, including the District of Columbia.

      9.     Defendant Sharp Corporation is a business entity organized under the laws of

Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522,

Japan. During the Class Period, Sharp Corporation manufactured, sold and distributed TFT-

LCD Products to customers throughout the United States, including the District of Columbia.

10.    Defendant Sharp Electronics Corporation is a wholly owned and controlled subsidiary of Sharp Corporation, with its principal place of business at Sharp Plaza, Mahwah, New Jersey, 07430.  During the Class Period, Sharp Electronics Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.  Sharp Corporation and Sharp Electronics Corporation are referred to collectively herein as "Sharp".

11.    Defendant Toshiba Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.  During the Class Period, Toshiba Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

12.    Defendant Toshiba Matsushita Display Technology Co., Ltd. is a business entity organized under the laws of Japan, with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan.  Defendant Toshiba Corporation states on its website the following regarding Toshiba Matsushita Technology Co., Ltd.: "[a]dvanced capabilities in LCD and organic LED displays drive product development and production and enhanced sales operations with a truly worldwide reach.  The company is the undisputed leader in low temperature polysilicon TFT technology, the preferred display for mobile devices and the underpinning technology for organic LED, the next generation display-or-choice for a range of products, including thin profile televisions.  These leading-edge capabilities support us in providing high value added displays that are light and thin, consume little power and offer excellent image quality."

(http://www.toshiba.co.jp/worldwide/about/company /tmd.htm).

7

During the Class Period, Toshiba Matsushita Display Technology Co., Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia. Toshiba Corporation and Toshiba Matsushita Display Technology Co., Ltd. are referred to collectively herein as "Toshiba".

13.     Defendant Hitachi Ltd. is a business entity organized under the laws of Japan, with its principal place of business at 6-1 Marunouchi Center Building 13F Chiyoda-ku, Tokyo, 100-8220, Japan. During the Class Period, Hitachi Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

14.     Defendant Hitachi Displays, Ltd. is a business entity organized under the laws of Japan, with its principal place of business located at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3, Chiyoda-ku, Tokyo, 101-0022, Japan. On its website, Hitachi Displays, Ltd. states that "[w]e provide the world's best products, quality and service to meet the needs of the digital age. These include Hitachi's proprietary Advanced-Super IPS LCDs offering clear pictures from any angle; large-sized LCD modules for TVs using our original moving picture technology; small-sized LCD modules for information terminal devices such as cellular phones and digital cameras with low power consumption and high resolution picture realized by LTPS (low-temperature poly-silicon) technology; and the middle-sized colorful LCD modules for amusement devices. We also produce components such as LCD drivers, color filters and back-lights." (<http://www.hitachi-displays.com/en/company/work/index.html>). During the Class Period, Hitachi Displays, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

15.     Defendant Hitachi America Ltd. is a wholly owned and controlled subsidiary of defendant Hitachi Ltd. Hitachi America Ltd. is a business entity organized under the laws of

New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York, 10591. During the Class Period, Hitachi America Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

16. Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned and controlled subsidiary of Defendant Hitachi Ltd., and is a business entity with its principal place of business located at 575 Mauldin Road, Greenville, SC, 29607. During the Class Period, Hitachi Electronic Devices (USA), Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia. Defendants Hitachi Ltd., Hitachi Displays, Ltd., Hitachi America Ltd. and Hitachi Electronic Devices (USA), Inc. are referred collectively herein as "Hitachi."

17. Defendant Sanyo Epson Imaging Devices Corporation ("Sanyo Epson") is a "joint venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd., started operations on October 1, 2004. It combines the liquid crystal display operations of Epson, Sanyo Electric, and Sanyo Group companies Tottori Sanyo Electric Co., Ltd. and Sanyo LCD Engineering Co., Ltd. and mobilizes each company's special fields of miniaturization, high resolution, high definition, and volume production technology." (<http://www.sanyo-epson.com/e/company/outline/index.html>). Defendant Sanyo Epson's principal place of business is located at World Trade Center Building 15F, 2-4-1 Hamamatsu-cho, Minato-ku, Tokyo, Japan. During the Class Period, Sanyo Epson manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

18. Defendant NEC Corporation is a business entity organized under the laws of Japan, with its principal place of business located at 7-1, Shiba 5-chome, Minato-ku, Tokyo 108-8001, Japan. During the Class Period, NEC Corporation manufactured, sold and distributed

9

TFT-LCD Products to customers throughout the United States, including the District of Columbia.

19.    Defendant NEC LCD Technologies, Ltd. is wholly owned and controlled subsidiary of Defendant NEC Corporation, and is an entity organized under the laws of Japan, with its principal place of business located at 1753 Shimonumabe, Nakahara-Ku, Kawasaki, Kanagawa 211-8666, Japan. During the Class Period, NEC LCD Technologies, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States including the District of Columbia.

20.    Defendant NEC Electronics America, Inc. ("NEC") is a wholly owned and controlled subsidiary of NEC Electronics Corporation, with its principal place of business at 2880 Scott Boulevard, Santa Clara, California and its manufacturing plant in Roseville, California. During the Class Period, NEC Electronics America, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

21.    Defendant IDT International Ltd. is an entity organized under the laws of Bermuda, with its principal place of business located at Block C, 9th Floor, Kaiser Estate Phase 1, 41 Man Yue Street, Hunghom, Kowloon, Hong Kong. During the Class Period, IDT International Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

22.    Defendant International Display Technology Co., Ltd. is an entity organized under the laws of Japan, with its principal place of business located at Nansei Yaesu Bldg. 3F, 2-2-10 Yaesu, Chuo-Ku, Tokyo 104-0028, Japan. Defendant International Display Technology Co., Ltd. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation. During the Class

Period, International Display Technology Co., Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

23.    Defendant International Display Technology USA Inc. is a corporation with its principal place of business located at 101 Metro Drive, Suite 510, San Jose, California. Defendant International Display Technology USA Inc. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation. During the Class Period, International Display Technology USA, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

24.    Defendant AU Optronics is Taiwan's largest manufacturer of TFT-LCD Products and has its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan. During the Class Period, AU Optronics manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

25.    Defendant AU Optronics Corporation America ("AUOCA") is a wholly owned and controlled subsidiary of defendant AU Optronics and has its corporate headquarters at 9720 Cypresswood Drive, Suite 241, Houston, Texas. AUOCA has a facility located in San Diego, California. During the Class Period, AUOCA manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

26.    Defendant Chi Mei Optoelectronics Corporation ("Chi Mei") is a leading manufacturer of TFT-LCD Products and has its global headquarters at No. 3, Sec. 1, Huanshi Road, Southern Taiwan Science Park, Sinshih Township, Tainan County, 74147 Taiwan. . During the Class Period, Chi Mei manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

27.    Defendant Chi Mei Optoelectronics USA, Inc. is a wholly owned and controlled subsidiary of Chi Mei and has its corporate headquarters at 101 Metro Drive, Suite 510, San Jose, California. During the Class Period, Chi Mei Optoelectronics USA, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

28.    Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a leading manufacturer of TFT-LCD Products and has its global headquarters at 1127 Hopin Road, Padeh City, Taoyuan, Taiwan. During the Class Period, Chunghwa Picture Tubes, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

29.    Defendant HannStar Display Corporation ("HannStar") is a leading manufacturer of TFT-LCD Products and has its headquarters at No. 480, Reuiguang Road, 12th Floor, Neihu Chiu, Taipei 114, Taiwan. . During the Class Period, HannStar Display Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States, including the District of Columbia.

**Co-Conspirators**

30.    Certain other persons, firms, corporations and entities have participated as co-conspirators with Defendants in the violations and conspiracies alleged in this complaint. In order to engage in the offenses charged and violations alleged herein, these co-conspirators have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged.

31.    At all relevant times, each Defendant was an agent of each of the remaining defendants, and in doing the acts alleged herein, was acting within the course and scope of such

12

agency. Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants. Defendants are individually sued as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions that are the subject of this complaint. Defendants, and each of them, have participated as members of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this complaint, and have performed acts and made statements in furtherance of the violations and conspiracy.

32.    The acts charged in this complaint have been done by Defendants or were ordered or done by Defendants' officers, agents, employees, or representatives, while actively engaged in the management of defendants' affairs.

## FACTUAL ALLEGATIONS

33.    Defendants and their co-conspirators have engaged in a contract, combination, trust or conspiracy, the effect of which was to raise the prices at which they sold TFT-LCD Products to artificially inflated levels from at least January 1, 1998 through at least December 31, 2005.

34.    Very recently, antitrust enforcement authorities in multiple countries have begun investigating this unlawful cartel. On December 11, 2006, Defendant LG Philips, in its form 6-K filed with the SEC, stated the following:

> Last Friday, as part of an investigation of possible anticompetitive conduct in the LCD industry, officials from the Korean Fair Trade Commission (KFTC) visited the offices of LG Philips LCD in Seoul Korea. In addition, the Japanese Fair Trade Commission (JFTC) issued a notice to our offices, in Tokyo, Japan and then the United States Department of Justice (DOJ) issued a subpoena to our offices in San Jose, California.

(<http://www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200_j_e.jsp>).

35.    On December 11. 2006, the Reuters news agency reported the following:

13

Samsung Electronics Co., Ltd. (005930.KS) is being investigated by fair
trade watchdogs in South Korea, Japan and the United States, the second
Korean flat screen maker named in a probe into possible price-fixing, a
news agency report said on Tuesday.

The report, from South Korea's Yonhap news agency, follows a disclosure
by LG Philips LCD Co., Ltd (034220.KS) on Monday that it was the
target of an investigation by the Korean Fair Trade Commission (KFTC),
the Japanese Fair Trade Commission (JFTC) and had received a subpoena
from the U.S. Department of Justice…

Yonhap citied unnamed regulatory and industry sources in reporting local
antitrust authorities were  also looking into possible collusion by Samsung
and LG Philips to fix the prices of LCD products and control their
supply…

Late on Monday, a KFTC spokesman said the probe was being conducted
by the Cartel Investigation Group.
(<http://business.scotsman.com/latest.cfm?id=1843512006>).

36.     On December 12 2006, other companies, including AU Optronics, Sharp,

and Sanyo Epson, indicated they were under investigation.

37.     According to one report, " '[t]he subject of the probe is price fixing,' Akinori

Yamada, a director of management and planning at Japan's Fair Trade Commission, said in

Tokyo today.  He said LG Philips and Samsung were being questioned, although he declined to

name or give the number of other companies being investigated.  In Washington, U. S. Justice

Department spokeswoman Gina Talamona said the agency 'is investigating the possibility of

anticompetitive practices' and is cooperating with foreign authorities."

(<http://www.bloomberg.com/apps/news?pid=20601080&sid=aSF7WY69eUPg&refer=asia>).

Another report indicated that "Min Chun Hong, an analyst at Goodmorning Shihan Securities,

said that if the companies [Samsung and LG Philips] were convicted, penalties could amount to

about 200 billion won, or $216 million, each."

(<http://www.iht.com/articles/2006/12/12/business/flat.php>).

38.   Michael Min, an analyst at Korea Investment and Securities, has been quoted as saying that the investigation may be focused on a period over the last several years when manufacturers of TFT-LCD Products were charging comparable prices. (<http://www.washingtonpost.com/wp-dyn/content/article/2006/12/12/ AR2006121200260.html>).

39.   There are also other indications that Defendants have engaged in collusive activity. A "Crystal Cycle" is an industry term that refers to shortages in the supply-and-demand cycle for LCD displays. A recent article in *Infoworld* (available at <http://www.infoworld.com/article/06/06/13/79145_25OPreality_1.html>) cited Chris Connery, an industry analyst at DisplaySearch, as follows: "[a]ccording to Connery, the talk in the industry is that the manufacturers are looking to create an artificial Crystal Cycle. At a recent conference in Taiwan, a leading producer of LCD glass stated publicaly that the industry should collectively look at a cutting back on production  from 100 percent to at least 85 percent. Otherwise, if supply outpaces demand, manufacturers will be forced to cut prices. … Will the mother-glass manufacturers actually create this artificial shortage? 'The chatter is growing louder each day,' Connery says." A subsequent *Infoworld* article (<http://www.infoworld.com/article/06/06/12/79223_ HNphilipscutslcd_1.html>) noted that the unnamed Taiwanese executive came from AU Optronics.

40.   Similarly, Samsung's presentation described above noted that "it was possible to secure a reasonable amount of profit while following the industry leaders" during the Class Period.

41.     Defendants, through their officers, directors and employees, effectuated the

aforesaid contract, combination, trust or conspiracy between themselves and their co-

conspirators by, among other things:

      a.     participating in meetings and conversations, including through various trade associations and committees, to discuss the prices of TFT-LCD Products in the United States, including the District of Columbia;

      b.     agreeing, during those meetings and conversations, to charge prices at specified levels and otherwise to increase and maintain prices of TFT-LCD Products sold in the United States, including the District of Columbia;

      c.     issuing price announcements and quotations in accordance with the agreements reached; and

      d.     selling TFT-LCD Products to various customers in the United States, including the District of Columbia at non-competitive prices.

## FRAUDULENT, ACTIVE, AND SELF-CONCEALMENT

42.     Throughout and beyond the conspiracy, Defendants and their co-conspirators

affirmatively and actively concealed their unlawful conduct from Plaintiff.  Defendants and their

co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of

their higher-level executives.  Defendants and their co-conspirators publicly provided pretextural

and false justifications regarding their price increases.  Defendants and their co-conspirators

conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts

in furtherance thereof, and actively concealed their activities through various other means and

methods to avoid detection.  Plaintiff did not discover, and could not have discovered through

the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the

antitrust laws as alleged herein until shortly before this class action litigation was commenced.

43.     As a result of the active concealment of the conspiracy by Defendants and their

co-conspirators, any and all applicable statutes of limitations otherwise applicable to the

allegations herein have been tolled.

## CLASS-ACTION ALLEGATIONS

44.     Plaintiff brings this class action pursuant to Rule 23(b)(2) of the Federal Rules of

Civil Procedure on behalf of herself and the following class members:

### Injunctive-Relief Class

All persons and business entities in all 50 states that indirectly
purchased Thin Film Transistor Liquid Crystal Display and/or
products containing Thin Film Transistor Liquid Crystal Display
manufactured, sold, or distributed by Defendants, for end use and
not for resale, from at least January 1, 1998 through at least
December 31, 2005.

Excluded from the Injunctive-Relief Class are Defendants, entities
in which Defendants have a controlling interest, Defendants'
employees, officers, or directors, Defendants' legal representatives,
successors, or assigns, judicial officers who may hear the case or
related persons, and jurors or related persons.

Plaintiff also brings this class action pursuant to Rule 23(b)(3) of the Federal Rules of

Civil Procedure on behalf of herself and the following class members:

### Money-Damages Class

All people and business entities in the District of Columbia that
indirectly purchased Thin Film Transistor Liquid Crystal Display
and/or products containing Thin Film Transistor Liquid Crystal
Display manufactured, sold, or distributed by Defendants, for end
use and not for resale, from at least January 1, 1998 through at
least December 31, 2005.

Excluded from the Money-Damages Class are Defendants, entities
in which Defendants have a controlling interest, Defendants'
employees, officers, or directors, Defendants' legal representatives,
successors, or assigns, judicial officers who may hear the case or
related persons, and jurors or related persons.

45.     Plaintiff has met the requirements of Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

46.     Plaintiff does not know the exact size of the classes, since this information is in Defendants' exclusive control. But based on the nature of the trade and commerce involved, Plaintiff believes that each class numbers at least in the hundreds and that the members of each class are geographically dispersed throughout the District of Columbia (Money-Damages Class), or alternatively, throughout the U.S. including in the District of Columbia (Injunctive-Relief Class). Therefore, joinder of the members of each class would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

47.     Plaintiff's claims within the respective classes are typical of other class members' claims because all class members were injured through the uniform misconduct described and paid supra-competitive prices for products containing TFT-LCD without being informed that they were paying illegal and improper prices. Accordingly, by proving her own claims, Plaintiff will presumptively prove the respective class members' claims.

48.     The following common questions of law or fact, among others, exist as to the members of the Class:

            a.      Whether Defendants conspired to fix, raise, maintain, or stabilize the
                    prices of TFT-LCD Products marketed, distributed, and sold in the U.S.
                    and/or the District of Columbia;

            b.      Whether Defendants conspired to manipulate and allocate the market for
                    TFT-LCD Products marketed, distributed, and sold in the U.S. and/or the
                    District of Columbia;

            c.      The existence and duration of Defendants' horizontal agreements to fix,
                    raise, maintain, or stabilize the prices of TFT-LCD Products marketed,
                    distributed, and sold in the U.S. and/or the District of Columbia;

d.    The existence and duration of Defendants' horizontal agreements to manipulate and allocate the market for TFT-LCD Products marketed, distributed, and sold in the U.S. and/or the District of Columbia;

e.    Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to fix, raise, maintain, or stabilize the prices of TFT-LCD Products marketed, distributed, and sold in the U.S. and/or the District of Columbia;

f.    Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to allocate the market for TFT-LCD Products marketed, distributed, and sold in the U.S. and/or the District of Columbia;

g.    Whether Defendants' conspiracy was implemented;

h.    Whether Defendants took steps to conceal their conspiracy from Plaintiff and the class members;

i.    Whether Defendants' conduct caused injury in fact to the business or property of Plaintiff and the class members, and if so, the appropriate class-wide measure of damages;

j.    Whether the agents, officers or employees of Defendants and their co-conspirators participated in telephone calls, meetings, and other communications in furtherance of their conspiracy; and

k.    Whether the purpose and effect of the acts and omissions alleged was to fix, raise, maintain, or stabilize the prices of TFT-LCD Products marketed, distributed, and sold in the U.S. and/or the District of Columbia, and to manipulate and allocate the market for TFT-LCD Products marketed, distributed, and sold in the U.S. and/or the District of Columbia.

49.    Plaintiff can and will fairly and adequately represent and protect the respective class members' interests and have no interests that conflict with or are antagonistic to the class members' interests. Plaintiff's attorneys are experienced and competent in complex class action and consumer-antitrust litigation.

50.    Class certification of the respective, alternative classes is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because a class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted given that:

a.  Common questions of law and fact overwhelmingly predominate over any individual questions that may arise among or within the respective, alternative classes and, consequently, enormous economies to the court and parties exist in litigating the common issues on a class-wide basis or, alternatively, bases, instead of on a repetitive individual basis or, alternatively, bases;

b.  Each individual class member's damage claim is too small to make individual litigation an economically viable alternative, and few class members have any interest in individually controlling the prosecution of separate actions;

c.  Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by class members; and

d.  Despite the relatively small size of each individual class member's claim, the aggregate volume of their claims, whether considered in a national class or, alternatively, in a District of Columbia class, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to the class or, alternatively, classes.

51.  Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because prosecution of separate actions would create a risk of adjudication with respect to individual class members, whether within or among the respective classes, which may, as a practical matter, dispose of other class members' interests who aren't parties to the adjudication or which may substantially impair or impede their ability to protect their interests. Separate actions prosecuted by individual class members would also create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

52.    Class certification, whether as a national class or a District of Columbia class, is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the respective class' members.

53.    Plaintiff's claims within and among the respective classes are typical of the associated class members' claims because Defendants injured Plaintiff and the respective class members in the same manner (*i.e.,* Plaintiff and the respective class members were forced to pay supra-competitive prices for products containing TFT-LCD Product).

## TRADE AND COMMERCE

54.    Throughout the Class Period, Defendants and their co-conspirators engaged in the business of marketing and selling TFT-LCD Products throughout the United States.

55.    As Defendant LG Philips states on its website, "the thin-film transistor liquid crystal display ("TFT-LCD") is a cutting-edge display, which screens picture information by adjusting the amount of light permitted." (<http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_j_e.jsp>). LG Philips further states that "TFT is a circuit formed with semiconductor films on a this glass substrate to control liquid crystals…. This circuit plays a vital role in controlling each pixel, the basic unit of a picture image. The color filter displays a color image by coating the pixel (red, green and blue) on a glass substrate." *Id.*

56.    At the portion of its website entitled "How TFT-LCD Works", Defendant LG Philips explains:

> A pixel, the smallest unit to indicate a picture image, is formed by three sub-pixels consisting of red, green and blue. The number of pixels arranged in a display determines the resolution of the TFT-LCD. TFT is composed of a data line (image signal transfer) and gate line (TFT on/off signal transfer). TFT existing in each sub-pixel controls the voltage difference between the TFT glass electrode and the color filter glass

21

electrode in order to adjust the molecular array of liquid crystals. Such a change in the molecule direction of liquid crystals alters the amount of light penetrating the liquid crystal layer. Consequently, the TFT-LCD display shows picture image information.
(http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_01_j_e.jsp>)

57.    The company describes some of the applications for TFT-LCD technology as follows:

TFT-LCD technology has created a wide range of computer and consumer products that would not have been possible with cathoderay tubes (CRT). The flat and thin attributes of LCDs make them ideal for mobile or portable applications. In addition, LCDs can operate at low voltage levels and dissipate with low heat exposure. Initially, LCDs were incorporated into notebook computers, similar in size and resolution to 12-14 inch CRT monitors. Through innovation, TFT-LCD engineers were able to develop displays providing much higher resolution than CRTs, in addition to producing them in larger sizes.

Today, TFT-LCDs are challenging CRT-based desktop computer monitors. As a result, a wider range of mobile computing applications are now available. Engineers have found ways to reduce weight, thickness, and the frame width of notebook computer displays. New TFT process technologies make it possible to deliver more pixels per inch and allow even portable computers to display more information than the latest CRT monitor. Such technology became available just as DVDs became popular, so consumers can now get DVD players in very thin and light packages. Currently, a similar transformation is occurring with next-generation cell phones and wireless networks.

(http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_02_j_e.jsp>).

58.    The market for TFT-LCD Products is huge. An October 10, 2006 article stated that "[m]anufacturers are expected to pump out 48.4 million LCDs for TVs this year alone, up 70 percent over 2005, with flat-panel sales – most of those using LCD technology – are expected to reach $US 88 billion this year and $US 100 billion in 2007, according to market research company Display Search." (<http://www.theagecom.au/ news/home-theatre/they-are-building-it-but–will-lcd-sales-come/2006/10/09/ 1160246068541.html#>).

59.    The market for the manufacture and sale of TFT-LCD Products is also conductive to the type of collusive activity alleged here.  That market is oligopolistic in nature.  According to date from iSuppli, in 2005, LG Philips had 21.4% of the large TFT-LCD panel global market share, Samsung had 20.9%, AU Optronics had 14.5%, Chi Mei had 11.8%, and Chunghwa had 7.3%, while the remaining suppliers controlled 24.1%.

(<http://www.eetimes.com/showArticle.jhtml?articleID=177101936>).  Samsung took over the leading position in the industry in 2006.

(<http://biz.yahoo.com/rb/061211/lgphilips_investigation.html?.v=2>).

60.    Some of these companies are known antitrust violators.  Samsung, for example, was fined $300 million by the United States Department of Justice ("DOJ") in October of 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory.  It is also under investigation by the DOJ (along with some of the other Defendants) for fixing prices of Static Random Access Memory.

61.    The industry is also marked by a web of cross-licensing agreements that facilitate collusion.  AU Optronics, for example, entered into licensing arrangements with Sharp in 2005 and Samsung in 2006.  Chi Mei has licensing arrangements with Sharp, AU Optronics, Chunghwa, HannStar and Hitachi.

62.    The market for the manufacture and sale of TFT-LCD Products is subject to high manufacturing and technological barriers to entry, some of which are described in  Samsung's own November 3, 2005 "Market Perspective & Strategy" presentation available at its website.  (<http:www.samsung.com/AboutSAMSUNG/

ELECTRONICSGLOBAL/InvestorRelations/IREventsPresentations/AnalystDay/index.htm>).  Efficient fabrication plants are large and costly.  TFT-LCD Products are also subject to

technological advances, so that firms within the industry must undertake significant research and development expenses.

63.    The TFT-LCD Products industry has also been subject to significant consolidation during the Class Period, as reflected in AU Optronics' recent acquisition of Quanta Display, the creation in 2001 of AU Optronics itself through the merger of Acer Display and Unipac Optoelectronics, or Fujitsu Limited's transfer of its LCD business to Sharp in 2005.

64.    Defendants sell their TFT-LCD Products through various channels including to manufacturers of electronic products and devices, and to resellers of TFT-LCD products.  These electronic products and devices and TFT-LCD Products are then sold, directly or indirectly, to consumers and are not altered during the course of sale.

**COUNT I**
**(Applicable to the Injunctive-Relief Class)**
**VIOLATION OF THE CLAYTON ACT**

65.    Plaintiff repeats and re-alleges paragraphs 1 through 64.

66.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize the prices of TFT-LCD Products in the U.S., in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

67.    In formulating and carrying out their illegal agreement, understanding, and conspiracy, Defendants and their co-conspirators did the following things, among others:

    a.    Fixed, raised, maintained, and stabilized the prices of TFT-LCD Products;

    b.    Allocated TFT-LCD Products markets among themselves;

    c.    Rigged bids for the award and performance of certain TFT-LCD Products contracts; and

24

    d.      Allocated among themselves and collusively reduce the production of TFT-LCD Products.

68.    Defendants' combination and conspiracy had the following effects, among others:

    a.      Price competition in the sale of TFT-LCD Products was restrained, suppressed, and/or eliminated in the U.S. including the District of Columbia;

    b.      Prices for TFT-LCD Products sold by Defendants and their co-conspirators were fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the U.S. including the District of Columbia; and

    c.      Those who purchased TFT-LCD Products directly or indirectly from Defendants and their co-conspirators were deprived of the benefits of free and open competition.

69.    Plaintiff has been injured and will continue to be injured in her business and property by paying more for TFT-LCD Products purchased indirectly from Defendants and their co-conspirators than he would have paid and will pay in the absence of Defendants' conspiracy, including paying more for personal computers and other TFT-LCD Products or products containing TFT-LCD Product components by the manufacturers of those products.

70.    As a proximate cause of Defendants' conspiracy, Plaintiff is entitled to an injunction against Defendants preventing and restraining Defendants' violations.

**COUNT II**
**(Applicable to the Money-Damages Class)**
**VIOLATION OF D.C. CODE §28-4501 *et seq.***

71.    Plaintiff repeats and re-alleges paragraphs 1 – 70.

72.    During the Class Period, Defendants engaged in a contract, combination, or conspiracy in restraint of trade or commerce within the District of Columbia. In particular, Defendants conspired to fix TFT-LCD Product prices and allocate TFT-LCD Product customers and markets. Defendants' conspiracy lessened full and free competition in TFT-LCD Products'

importation and sales into the District of Columbia and controlled their costs, which violated

D.C. Code §28-4501 *et seq.*

73.     Defendants' conspiracy caused them to (a) fix, raise, maintain, and stabilize TFT-

LCD Product prices; (b) allocate TFT-LCD Product customers and markets; and (c) caused

Plaintiff and the other District of Columbia class members to pay higher prices for TFT-LCD

Product that they indirectly purchased from Defendants.

74.     In formulating and effectuating their conspiracy, Defendants and their co-

conspirators:

        a.     Met to discuss TFT-LCD Product customers and markets;

        b.     Agreed to charge prices at certain levels and to increase or maintain prices
            for TFT-LCD Product sold in the District of Columbia;

        c.     Issued price announcements, quotations, and charged prices consistent
            with their illegal agreement; and

        d.     Allocated TFT-LCD Product markets and customers consistent with their
            illegal agreement.

75.     Defendants' conspiracy had the following effects:

        a.     TFT-LCD Product price competition was restrained, suppressed, and
            eliminated throughout the U.S., including in the District of Columbia;

        b.     TFT-LCD Product prices were raised, fixed, maintained, and stabilized at
            artificially high levels throughout the U.S., including in the District of
            Columbia;

        c.     Plaintiff and the other District of Columbia class members that indirectly
            purchased TFT-LCD Product were deprived of free and open market
            competition and were injured; and

        d.     Plaintiff and the other District of Columbia class members paid more than
            they otherwise would have for TFT-LCD Product that they purchased
            indirectly.

76.     Defendants' conspiracy has substantially affected and impacted trade and commerce within the District of Columbia.

77.     During the Class Period, District of Columbia consumers indirectly purchased millions of dollars of Defendants' TFT-LCD Product in the District of Columbia from Defendants.  By reason of Defendants' violations of the D.C. Code §28-4501, Plaintiff and the District of Columbia class members paid significantly more for products containing Defendants' TFT-LCD Product than they would have paid absent Defendants' illegal combination and conspiracy, and, as a result, Plaintiff and the District of Columbia class members were injured in their businesses and property and have suffered damages in amounts presently undetermined.

### COUNT III
### (Applicable to the Money-Damages Class)
### UNJUST ENRICHMENT

78.     Plaintiff repeats and re-alleges paragraphs 1 through 77.

79.     As the result of Defendants' illegal agreement, contract, combination, and conspiracy, Plaintiff and the District of Columbia class members conferred a benefit upon Defendants, and Defendants received and retained this benefit under such circumstances that it would be inequitable and unconscionable to permit Defendants to retain this benefit without paying its reasonable value to Plaintiff and the class members.

80.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and District of Columbia class members suffered injury and seek an order directing Defendants to return to them the amount each of them improperly paid to Defendants, plus interest.

### JURY DEMAND

81.     Plaintiff demands trial by jury on all triable issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in the respective class

members' favor and against Defendants, as follows:

A.    That this Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and certify either or both classes;

B.    With respect to the Injunctive-Relief Class, that this Court rule that Defendants' conspiracy violated the Sherman Act and that injunctive relief under the Clayton Act is appropriate;

C.    With respect to the Money-Damages Class, that this Court rule that Defendants' conspiracy violated District of Columbia law and that compensatory damages, including treble damages, are appropriate;

D.    With respect to the Money-Damages Class, that this Court determine that Defendants were unjustly enriched;

E.    That this Court permanently enjoin Defendants from conspiring to fix TFT-LCD Product prices and allocating TFT-LCD Product markets or other injunctive relief as this Court deems appropriate;

F.    That this Court award Plaintiff post-judgment interest, her costs, and reasonable attorneys' fees; and

G.    That this Court order any other relief as it deems just and proper.

Dated: March 6, 2007                          Respectfully submitted,

By:  _____
Donna F. Solen #465098
Gary E. Mason #418063
**THE MASON LAW FIRM, LLP**
1225 19th Street, NW
Suite 500
Washington, DC 20036
Telephone: 202-429-2290
Facsimile: 202-429-2294
Email: gmason@masonlawdc.com
Email: dsolen@masonlawdc.com

Daniel R. Karon, Esq.
**GOLDMAN SCARLATO & KARON, P.C.**
55 Public Square, Suite 1500
Cleveland, OH  44113
Telephone:    (216) 622-1851
Facsimile:    (216) 622-1852
E-mail:       karon@gsk-law.com

Krishna B. Narine, Esq.
**LAW OFFICES OF KRISHNA B. NARINE**
7893 Montgomery Avenue, Suite 300
Elkins Park, PA 19027
Telephone:    (215) 782-3240
Facsimile:    (215) 782-3241
E-mail:       knarine@kbnlaw.com

Gordon Ball, Esq.
**BALL & SCOTT**
Suite 750, Bank of America Center
550 Main Street
Knoxville, TN  37902
Telephone:    (865) 525-7028
Facsimile:    (865) 525-4679
E-mail:       gball@ballandscott.com

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

### I (a) PLAINTIFFS

Rebecca Bly, on behalf of herself and all others similarly situated,

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    11001
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Donna F. Solen
The Mason Law Firm, LLP
1225 19th Street, N.W. Suite 500
Washington, DC  20036    202-429-2290

### DEFENDANTS

LG Philips LCD Co., Ltd., et al

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

ATTORNEYS (IF KNOWN)

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

◉ 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. Antitrust**

[X] 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**    **OR**    ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General**<br>☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions** (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans** (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act**<br>☐ **720 Labor/Mgmt. Relations**<br>☐ **730 Labor/Mgmt. Reporting & Disclosure Act**<br>☐ **740 Labor Railway Act**<br>☐ **790 Other Labor Litigation**<br>☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **444 Welfare**<br>☐ **440 Other Civil Rights**<br>☐ **445 American w/Disabilities-Employment**<br>☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☐ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights-Voting** (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Violation of Section 1 of the Sherman Act, 15 USC §1 and DC Code § 28-4501 et seq., consumers who purchased TFT-LCD products indirectly from Defs

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** [_____] | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☒  NO ☐ |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  March 6, 2007    SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.